# EXHIBIT A

Received and E-Filed for Record
6/17/2019 4:57 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Megan Shiflett

CAUSE NO. 19-06-08338 _____

| | | |
|---|---|---|
| AUDRA JO WELDON<br>    Plaintiff,<br><br>vs.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY<br>OF AMERICA,<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br>MONTGOMERY COUNTY, TEXAS<br>Montgomery County - 284th Judicial District Court<br><br>_____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

Audra Jo Weldon[1], the plaintiff, complains of The Guardian Life Insurance Company of America ("Guardian"), the defendant, and for cause of action shows:

## SELECTION OF DISCOVERY LEVEL

1. Mrs. Weldon intends to conduct discovery under Discovery Level 3 (TEX. R. CIV. P. 190).

## PARTIES, JURISDICTION AND VENUE

2. Mrs. Weldon is an individual, residing in Montgomery County, Texas. Guardian is a life insurance company organized under the laws of the State of Massachusetts, and authorized to engage in the insurance business in Texas. Citation may be served on Guardian by serving Corporation Service Company, its registered agent, at 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

3. The District Courts of Montgomery County, Texas, have jurisdiction over this controversy as the amount in controversy exceeds the minimum jurisdictional limits of this court.

---

[1] To the extent it is necessary, individually and on Behalf of the Estate of Donald Weldon Jr.

4. The Court has personal jurisdiction over Guardian because Guardian is an insurance company that engages in the business of insurance in the State of Texas, and Mrs. Weldon's causes of action arises out of Guardian's business activities in the State of Texas.

5. Venue is proper in the District Courts of Montgomery County, Texas, pursuant to Tex. Civ. Prac. & Rem. Code § 15.032, which makes venue proper in the county of which the beneficiary resides.

## BACKGROUND FACTS

6. On October 29, 2017, Mr. Donald Weldon Jr. was offered full-time employment with Elgin Separation Solutions dba of KEMTRON Technologies, LLC ("Elgin"). He officially started working with Elgin on October 30, 2017. As part of Mr. Weldon's employment benefits, he was granted fifteen (15) days of Paid-Time-Off ("PTO") to utilize as he so chose.

7. His employment with Elgin also allowed him the ability to purchase various insurance policies through Guardian. Mr. Weldon enrolled in a plan that gave him coverage for Dental, Voluntary Accidental Death and Dismemberment Insurance, Voluntary Term Life Insurance and Basic Term Life Insurance ("Policy"). He named his wife, Audra Jo Weldon, the beneficiary on the Policy.

8. The Policy has various requirements in order for the employee to be eligible for coverage. For example, the employee must be working full-time, legally working in the United States and have paid, or are paying, all or part of the cost of coverage.

9. The Policy also states the employee "must be fully capable of performing the major duties of your regular occupation for your employer on a full-time basis at 12:01 AM Standard Time for your place of residence on the scheduled effective date" in order for the Policy to go into effect. It further gives a caveat in the event that the employee is on vacation. The Policy states "[i]f

2

the scheduled effective date falls: . . . on a vacation day . . . and you were performing the major duties of your regular occupation and working your regular number of hours on your *last* regularly scheduled work day, your coverage will start on the scheduled effective date."

10. Mr. Weldon met all of these qualifications. As of January 1, 2018, his premiums were paid in full. Per the Policy, it had a "scheduled effective date" of January 1, 2018.

11. On December 14 and 15, 2017, Mr. Weldon used his first two PTO days in order to travel to Dallas to attend his daughter's induction into the Nurse's Honor Society and graduation ceremony from the University of Texas at Arlington. (Exhibit A & B (family photos from the ceremonies)). On December 16, 2017, following the ceremonies, Mr. Weldon returned to his home in Magnolia, Texas. During the weekend, Mr. Weldon began to feel ill, prompting him to use more of his PTO days.

12. On December 20, 2017, Mr. Weldon visited the Emergency Room. On December 21, 2017, he was admitted for care at Tomball Regional Medical Center.

13. From December 14, 2017, to January 5, 2018, while in the hospital, Mr. Weldon used his fifteen (15) PTO days. Elgin considered Mr. Weldon to be a full-time employee through January 31, 2018, and continued to disperse his monthly paychecks.

14. On January 10, 2017, Mr. Weldon passed away.

15. Mrs. Weldon initiated the claims process to collect the proceeds of Mr. Weldon's life insurance policies provided by Guardian. Per the Policy, Mrs. Weldon was to be paid $84,000. She relied on these funds in order to pay various expenses attributed to Mr. Weldon's care.

16. Guardian denied Mrs. Weldon's claim. Guardian claimed Mr. Weldon was not considered a full-time employee, able to perform the major duties of his employment, on the scheduled effective date.

3

17. Mr. Weldon's last regularly scheduled work day was December 13, 2017. On that day, he was fully capable of performing the major duties of his occupation and working his regular number of hours. Thus, per the Policy terms, it became effective January 1, 2018. All conditions precedent had been performed. The denial of the claim constitutes a breach of contract, unfair settlement practices, and deceptive trade practices.

## CAUSES OF ACTION

### I. BREACH OF CONTRACT

18. Guardian's conduct constitutes a breach of the insurance contract made between Guardian and Mr. Weldon.

19. Guardian's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Guardian's insurance contract with Mr. Weldon. As a result, Mrs. Weldon has incurred damages within the jurisdictional limits of this court.

### II. UNFAIR SETTLEMENT PRACTICES

#### A. Existence of Insurance Policy

20. Guardian issued a policy on the life of Donald Weldon Jr. that became effective on January 1, 2018.

#### B. Terms of Insurance Policy

21. Among other things, the Policy issued by Guardian provided insurance in the face amount of $84,000. The Policy obligated Guardian to pay the face amount on the death of Donald Weldon Jr., the insured. The Policy required Guardian to pay the named beneficiary upon the receipt of the deceased written proof of death. The Policy states that so long as the insured is an

4

active full time employee, having paid all or part of the cost of employee coverage, the Policy will be valid on the "scheduled effective date."

22.     Mr. Weldon was current on his premium payments on the scheduled effective date. He also met the qualification of "full time employee" because he was legally working in the United States and working the minimum number of hours set by his employer at the employer's place of business.

23.     On January 1, 2018, Mr. Weldon was not at work, but using one of the 15 PTO days afforded him by his employer. Although he was not at the place of business on this day, he was not in violation of the Policy terms. The Policy states "[if] the scheduled effective date falls: . . . on a vacation day, . . . and if you were performing the major duties of your regular occupation and working your regular number of hours on your last regularly scheduled work day, your coverage will start on the scheduled effective date."

24.     Mr. Weldon had taken PTO starting on December 14th through January 5th. Per the Policy terms, he was performing the major duties of his employment on his last regularly scheduled day, December 13th, 2017.  Thus, on January 1, 2018, the Policy was in effect.

### C. Mrs. Weldon is the Beneficiary

25.     Mrs. Weldon is the beneficiary under the terms of the Policy and is entitled to receive the benefits payable by Guardian as a result of the death of Donald Weldon Jr.

### D. Death of the Insured

26.     Donald Weldon Jr. died on January 10, 2018, from complications of pneumonia.

5

### E. All Conditions Performed

27.     At the time of the death of the insured, the Policy was in full force and effect. All conditions precedent to Guardian's liability under the Policy have occurred or have been performed. Nonetheless, Guardian has refused and still refuses to pay Mrs. Weldon the benefits due under the Policy.

### F. Policy Payable to Mrs. Weldon

28.     The Policy became payable by its terms on January 10, 2018. Mrs. Weldon is entitled to recover $84,000, the benefits payable under the Policy, together with interest on this sum as provided by law.

### G. Insurance Code Violations

29.     Guardian's Policy allows for coverage to begin, even in the event that the insured is taking a "vacation day" on the scheduled effective date. The scheduled effective date for Mr. Weldon's Policy was January 1, 2018. He was not at work, but taking a "vacation day," thus the Policy, per the terms, became effective. However, Guardian now claims it was not in effect and has refused to pay the Policy's proceeds to Mr. Weldon's widow. This conduct constitutes a violation of the Texas Insurance Code.

30.     Guardian has engaged in unfair settlement practices with respect to the claim by Mrs. Weldon by misrepresenting a material policy provision relating to the coverage, as well as, failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which its liability has become reasonably clear. TEX. INS. CODE § 541.060(a)(1)(2)(A). Through its Policy and conduct, Guardian has made statements in a manner that would mislead a reasonably prudent person to a false conclusion of material fact. TEX. INS. CODE § 541.061(3).

Namely, its Policy provides an avenue for coverage in the event a vacation day is taken on the scheduled effective date, where now its conduct is contrary to this provision.

### III. DECEPTIVE TRADE PRACTICES ACT

#### A. Mr. Weldon's Status as Consumer

31. Mr. Weldon acquired by purchase the following goods: the Policy.

#### B. Guardian's Misconduct

32. At the time of the transaction described above, Guardian represented through the Policy, purchased by Mr. Weldon, that a properly taken "vacation day" on the scheduled effective date of the Policy would not prevent it from going into effect. The representations by Guardian were false, misleading, and deceptive, because Guardian now attempts to deny a claim on such Policy under the exact provisions the Policy seeks to protect against. The foregoing representations violate subsections (b)(5) and (12) of Section 17.46 of the Deceptive Trade Practices—Consumer Protection Act in that they constitute representations that (1) goods have characteristics, uses, or benefits which they do not have, and (2) an agreement confers rights and remedies which it does not have.

33. Mr. Weldon relied to his detriment that the terms of his Policy were true and accurate that in the event he needed to file a claim, that claim would be satisfied. Evidence of this reliance was shown through his purchase and compliance with the terms of the Policy.

#### C. Notice

34. On April 4 2018, Mrs. Weldon gave written notice to Guardian advising of her specific complaints and the amount of $84,000 under the Policy, as well as, punitive damages, treble damages, and expenses, including attorney's fees, reasonably incurred by Mrs. Weldon in asserting the claim against Guardian.

7

### D. Guardian's Knowledge

35. The conduct of Guardian as described in this petition was committed knowingly. Guardian was actually aware, at the time of the conduct, of the falsity, deception, and unfairness of the conduct about which Mrs. Weldon now complains. As a direct result of Guardian's knowing misconduct, Mrs. Weldon suffered mental anguish. Accordingly, Guardian is liable to Mrs. Weldon for mental anguish damages suffered and additional damages of up to three times the amount of economic damages as permitted by the Deceptive Trade Practices—Consumer Protection Act.

### E. Guardian's Intentional Misconduct

36. The conduct of Guardian as described in this petition was committed intentionally. That is, Guardian had actual awareness of the falsity, deception, or unfairness of the act or, coupled with the specific intent that Mr. Weldon act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. As a result of Guardian's intentional misconduct, Mrs. Weldon suffered mental anguish. Accordingly, Mrs. Weldon is entitled to damages for mental anguish and additional damages of up to three times Mrs. Weldon's economic damages and damages for mental anguish as provided by the Deceptive Trade Practices—Consumer Protection Act.

## DAMAGES

37. Guardian's conduct, as described above, was the producing cause of Mrs. Weldon's damages.

38. For breach of contract, Mrs. Weldon is entitled to regain the benefit of her bargain, which is the amount of her claim together with attorney's fees.

39. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Mrs. Weldon is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorney's fees.

40. For the knowing conduct of the acts described above, Mrs. Weldon asks for three times her actual damages. TEX. INS. CODE § 541.152.

41. For the violations of the Deceptive Trade Practices—Consumer Protection Act, Mrs. Weldon ask for economic damages, which are equal to the Policy proceeds that were wrongfully denied, mental anguish, court costs, and attorney's fees.

42. For the knowing and intentional conduct of the acts described above, Mrs. Weldon asks for three time her damages. TEX. BUS. & COM. CODE § 17.05b(1).

## ATTORNEY'S FEES

43. Because of the conduct of Guardian, Mrs. Weldon has been compelled to engage the services of an attorney to prosecute this action against Guardian. Mrs. Weldon is entitled to recover a reasonable sum for the necessary services of Mrs. Weldon's attorney in the preparation of trial of this action, including any appeals to the Court of Appeals or the Texas Supreme Court.

## PRAYER AND REQUEST FOR RELIEF

WHEREFORE, Mrs. Weldon requests that Guardian be cited to appear and answer, and that on final trial Mrs. Weldon have the following:

1. Judgment against Guardian for the sum of $84,000, the benefits payable under the insurance policy made the basis of this suit.

2. By reason of Guardian's conduct, mental anguish damages in an amount within the jurisdictional limits of the Court.

9

3. By reason of Guardian's knowing conduct, additional damages as allowed by TEX. INS. CODE § 541.152.

4. By reason of Guardian's knowing and intentional conduct, additional damages as allowed by TEX. BUS. & COM. CODE § 17.05b(1).

5. Prejudgment interest as provided by law.

6. Attorney's fees.

7. Postjudgment interest as provided by law.

8. Costs of suit.

9. Such other and further relief to which Mrs. Weldon may be justly entitled.

Date:   June 17, 2019.

**THOMPSON & KNIGHT LLP**

By: ___*/s/ Mitchell E. Ayer*___
     Mitchell E. Ayer
      State Bar No.: 01465500
      mitchell.ayer@tklaw.com
     811 Main Street, Suite 2500
     Houston, Texas 77002-6129
     Telephone: (713) 654-8111
     Facsimile: (713) 654-1871

     Nicholas S. Davis
      State Bar No. 24101678
      nick.davis@tklaw.com
     777 Main Street, Suite 3300
     Fort Worth, Texas 76102
     Telephone: (817) 347-1716
     Facsimile: (817) 347-1799

**Attorneys for Plaintiff Audra Jo Weldon**



**EXHBIT A**



**EXHBIT B**